Pat Noble v. The State.

No. 4125. Decided October 28, 1908.

**Murder—Charge of Court—Neglect—Improper Treatment.**

Where upon trial for murder the evidence raised the issue as to whether the deceased died from the wounds inflicted by the defendant or from his own gross neglect, or improper treatment by some other person; a charge of the court which failed to instruct the jury what offense defendant would be guilty of if deceased through his own gross neglect, or that of others caused his death, but simply charged the jury that if defendant's act did not kill deceased that he would not be guilty of homicide was reversible error.

Appeal from the District Court of Mitchell. Tried below before the Hon. James L. Shepherd.

Appeal from a conviction of murder in the first degree; penalty, life imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of charge of court: Hart v. State, 15 Texas Crim. App., 202; Powell v. State, 13 Texas Crim. App., 244; Morgan v. State, 16 Texas Crim. App., 593; Wood v. State, 31 Texas Crim. Rep., 571.

BROOKS, Judge.—Appellant was convicted of murder in the first degree and his punishment assessed at imprisonment for life.

The facts in substance show that appellant was sitting in a negro church when the deceased entered same at the instance of the one having charge of the church with instructions to turn the lights off at an ordinary electric switchboard. He did so. Appellant became enraged, turned the lights back on and deceased returned and turned the lights off again. Thereupon appellant became enraged and remarked to deceased, "It looks like you are trying to start something." Deceased said, "No, it looks like you are trying to start something." Thereupon, appellant rushed at him and stuck a knife in his head an inch and three-sixteenths and the blade was broken off, leaving that much of the knife in the side of deceased's head. This occurred on Friday night. Saturday deceased worked at the compress, and complained Saturday night, Sunday, and Monday became unconscious and Tuesday morning physicians were sent for. They trepanned his head, cutting about an inch of the skull out and extracting the knife blade. The physicians testified that the wound was not necessarily fatal and believed if they could have reached deceased immediately after he received the wound, or within twenty-four hours thereafter that he could have gotten well. They appeared in their testimony to somewhat contradict this statement

by stating that the wound caused deceased's death since the same had begun to suppurate at the time they reached him on Tuesday. One of them testified that he did not know whether the wound was necessarily a fatal one or not. That wounds of that character do not usually prove fatal if they are looked after right in the beginning, and that he believed the deceased would have lived if the operation had been performed immediately before suppuration began. Then he used this language: "I think it was the wound that caused his death, but the fact that that blade was in there for so long creating that pressure there, with no chance for drainage, caused the blood to flow to that part and produce suppuration." The doctors testify that the operation was done skilfully, and the utmost care used by them to preserve deceased's life. So then, the matter relates back to the question as to whether or not the deceased himself was guilty of gross neglect. On this question the court charged the jury as follows: "Although the injury which caused death might not, under other circumstances have proved fatal, yet, if such injury be the cause of death without it appearing that there has been any gross neglect, such as by some other person such as deceased, it would be homicide. And if you believe from the evidence that Pat Noble stabbed the deceased with a knife, and inflicted upon him a wound which was not, in itself, necessarily mortal, and that the wound inflicted produced suppuration in the brain or any other effect which resulted in the death of the deceased, the party inflicting the injury would be as guilty as if the wound was one which would of itself inevitably lead to death unless it appears from the evidence that there was gross neglect by some other person such as the deceased.

"You are instructed also that if the wound inflicted would not necessarily result in death and it appears that there was gross neglect on the part of the deceased, it is not homicide in him who inflicts the first injury; but if the injury, though not necessarily fatal, or, if said injury results in death, then it would amount to homicide, unless it appears that there has been gross neglect on the part of the deceased himself." Appellant criticises this charge in his motion for new trial on the ground that the same is upon the· weight of the evidence and is misleading, and is not the law applicable under the facts raising the issue as to whether or not deceased died of a wound inflicted by appellant or from his own neglect; that the jury, in this connection, should have had an affirmative instruction that if they believed from the evidence that the deceased was guilty of great neglect in not having and securing medical attention sooner, and that this neglect was the cause of his death, then they could find the defendant guilty of no higher offense than assault with intent to murder. Further, that said charge is erroneous in that it does not present this issue of the case in a

manner so that a jury could intelligently pass upon the issue and is more onerous than the law will allow, because the jury should have been told that if they had a reasonable doubt as to whether or not death resulted from neglect or from the wound, the same should be resolved in favor of the defendant. We do not think the charge is upon the weight of the evidence, but the same is not drawn, as we understand the law to be, and clearly appellant's criticism is correct wherein he says the court should have told the jury the defendant could not be guilty of any higher offense than assault to murder, if he was not the complete cause of the death of the deceased. The court should have charged articles 651 and 652 of the Penal Code. The court after charging said articles should have applied the law to the facts of the case and told the jury that unless the deceased died from some gross neglect or manifest improper conduct of the person injured, or treatment of the deceased at the hands of the doctors, that appellant would be guilty of some degree of homicide as defined in the charge, but if the gross neglect, or manifest improper treatment of the physicians, or his own neglect caused the death of deceased, or if the jury have a reasonable doubt of these facts, they should find the defendant not guilty of any degree of culpable homicide, but should then consider whether he is guilty of assault with intent to murder or aggravated assault. Then the charge should proceed as it did, to define these offenses. But if the jury should believe that the acts of appellant were the direct cause of the death of deceased, and there was no improper treatment, or neglect on his part or that of the doctor, then the jury would consider as to whether the defendant was guilty of some degree of culpable homicide. In other words, the defendant can not be convicted of a homicide unless his act, agency, procurement, or culpable omission caused same. If the deceased is negligent in caring for himself after receiving injury, or if his physicians or others, so grossly mistreat him as to cause his death, then the defendant is not responsible, under the law of this State, for the death of the deceased. The charge nowhere tells the jury what the defendant would be guilty of if deceased through his own gross neglect, or his physicians' caused deceased's death, but the charge merely tells the jury that if defendant's act did not kill deceased, he would not be guilty of homicide and does not state what grade of offense he would be guilty of if he did not commit the homicide. See Morgan v. State, 16 Texas Crim., 593. It follows, therefore, that the court's charge is erroneous, as is insisted upon by appellant.

Various criticisms are made of the court's charge and of the argument of the prosecuting attorneys. Many of these arguments were not proper. In view of the reversal of the case on another matter, we do not deem it necessary to comment on same.

For the error discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Ramsey, Judge, absent.