## No. 25997

### The People of the State of Colorado v. Archie Calvaresi

(534 P.2d 316)

Decided April 21, 1975.    Petition for modification denied May 5, 1975.

278

John P. Moore, Attorney General, John E. Bush, Deputy, David A. Sorenson, Assistant, Gregory L. Williams, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Lee Belstock, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This is an appeal from a conviction of manslaughter under 1971 Perm. Supp., C.R.S. 1963, 40-3-104[1]. The defendant urges the unconstitutionality of a portion of the manslaughter statute and error in some instructions. We reverse and remand for a new trial.

On the night of August 7, 1972, the defendant left a union meeting and went to his home. He had recently moved, and in his back yard were tires, car rims, and empty and full moving cartons. He was told by his wife, upon his return, that she had heard dogs barking and was frightened. After going to bed, they again heard the dogs barking, and the defendant went to a back window and saw a man standing at the back of his truck. He took a .38 caliber revolver out of a drawer and went out through his back door, where he saw a man run and jump the fence. The defendant shouted for him to halt, and warned him that he had a gun. He shouted "halt" once more, and then fired the gun. The man was hit in the back, just below his right shoulder. The defendant asked his wife to call the authorities and an ambulance and the defendant went to the man's aid. When officers came, they ad-

[1]Now section 18-3-104, C.R.S. 1973.

vised defendant of his rights, after which he made a statement, which was introduced at trial without objection.

The victim, Lobato, was taken to an emergency room at St. Anthony's North Hospital where a doctor examined and treated him. Lobato remained there for approximately two hours and then was transferred to Colorado General Hospital. He died en route. At the trial there was testimony to support defendant's theory that Lobato received inadequate medical treatment at St. Anthony's in that, among other things, the doctor there diagnosed the exit wound below Lobato's right front shoulder as an entrance wound, but did not discover the entrance wound which was on the back of his right shoulder. Under the circumstances the wisdom of the transfer was questionable.

The doctor at St. Anthony's and one other doctor testified that the cause of death was the bullet wound, which severed the subclavian artery. Two other doctors testified that the sole cause of death was the inadequate medical care received at St. Anthony's hospital.

## I.

We first address the defendant's assertion that the portion of the manslaughter statute under which the defendant was convicted is unconstitutional, in that the requirement to sustain a conviction under that statute (recklessness) is indistinguishable from the requirement to sustain a conviction for criminally negligent homicide (criminal negligence).

The manslaughter statute provides:
"(1) A person commits the crime of manslaughter if:
(a) He recklessly causes the death of another person;
* * * *
"(2) Manslaughter is a class 4 felony." 1971 Perm. Supp., C.R.S. 1963, 40-3-104.[2]

Criminally negligent homicide is defined as follows:
"(1) A person commits the crime of criminally negligent homicide if he causes the death of another person:
(a) By conduct amounting to criminal negligence:
* * * *
"(2) Criminally negligent homicide is a class 1 misdemeanor."

---

[2]Now section 18-3-104, C.R.S. 1973.

1971 Perm. Supp., C.R.S. 1963, 40-3-105.[3]

The conduct involved in the offenses is also defined by statute, 1971 Perm. Supp., C.R.S. 1963, 40-1-601:[4]

"(8) 'Recklessly'. A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware or reasonably should be aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a willful and wanton deviation from the standard of conduct that a reasonable person would observe in the situation. . . . 'Willful and wanton' . . . means conduct purposefully committed which the person knew or reasonably should have known was dangerous to another's person or property, and which he performed without regard to the consequences or the rights and safety of another's person or property."

"(9) 'Criminal negligence'. A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes gross deviation from the standard of care that a reasonable person would observe in the situation."

▮ Defendant contends that any distinction between recklessness and criminal negligence as defined above are purely semantic, and that where two statutes with unequal penalties proscribe the same act, the defendant convicted under the harsher statute is denied equal protection of the law. We agree to the extent that we hold unconstitutional the portion of the manslaughter statute (§ 40-3-104(1)(a)) under which this defendant was convicted.

▮ Equal protection of the law is a guarantee of like treatment of all those who are similarly situated. Classification of persons under the criminal law must be under legislation that is reasonable and not arbitrary. There must be substantial differences having a reasonable relationship to the persons involved

[3]Now section 18-3-105, C.R.S. 1973.
[4]Now section 18-1-501, C.R.S. 1973.

and the public purpose to be achieved. *Dunbar v. Hoffman,* 171 Colo. 481, 468 P.2d 742 (1970). A statute which prescribes different degrees of punishment for the same acts committed under like circumstances by persons in like situations is violative of a person's right to equal protection of the laws. *See People v. McKenzie,* 169 Colo. 521, 458 P.2d 232 (1969); and *State v. Pirkey,* 203 Ore. 697, 281 P.2d 698 (1955), and cases cited therein.

Under the manslaughter statute in question, a jury must determine if an accused acted "recklessly," *i.e.,* whether he failed to perceive a risk, of which he should have been aware, and whether he acted in wanton and willful disregard of the standard of conduct that a reasonable person would observe in a given situation. Under the criminal negligence statute, the jury must determine whether the failure to perceive an unjustifiable risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. The distinction between a gross deviation from, and a wanton and willful disregard of, a standard of care is not sufficiently apparent to be intelligently and uniformly applied. The legislative attempt to distinguish between recklessness, and its purportedly less culpable counterpart, criminal negligence, constitutes a distinction without a sufficiently pragmatic difference. To base a conviction of a felony, rather than a misdemeanor, upon the shifting sands of these semantics does not constitute substantial justice.

## II.

Under either statute, the defendant can be convicted only if his recklessness or criminal negligence *causes* the death of a person. Defendant argues that there was not enough evidence of causation to submit the question to the jury. We disagree. However, we do agree with his next contention that the court erred in not instructing the jury fully on the issue of causation.

The only instruction relating to causation read:

"It is not a defense to one whose act has contributed to the death that improper treatment on the part of physicians, nurses, or the victim also contributed thereto; but one who has inflicted an injury is not responsible for homicide where death results solely from erroneous treatment by another."

This is not a sufficiently complete statement of the law.

"To warrant a conviction for homicide, the death must be the natural and probable consequence of the unlawful act, and not the result of an independent intervening cause in which the accused does not participate, and which he could not foresee. If it appears that the act of the accused was not the proximate cause of the death for which he is being prosecuted, but that another cause intervened, with which he was in no way connected, and but for which death would not have occurred, such supervening cause is a defense to the charge of homicide." 1 *Wharton's, Crim. Law & Pro.,* § 200, p. 448 (12th Ed. 1957)

■ It is defendant's contention that the inadequate medical treatment was such a supervening cause. However, mere negligence on the part of the attending physician does not constitute a defense. "[N]egligence, unfortunately, is entirely too frequent a human conduct to be considered 'abnormal.' " *Perkins on Criminal Law,* Ch. 6 § 9, p. 716 (2d Ed. 1969). As stated in *Wharton,* mere medical negligence can reasonably be foreseen. We hold, however, that gross negligence is abnormal human behavior, would not be reasonably foreseeable, and would constitute a defense, if, but for that gross negligence, death would not have resulted.

■ On retrial the instructions should include Wharton's rule stated above, as well as the *sine qua non* rule just mentioned. They should not condition an acquittal upon death resulting *solely* from the treatment by another.

### III.

■ With respect to criminally negligent homicide the court instructed the jury as to the two ways in which the crime may be committed: (a) "by conduct amounting to criminal negligence" and (b) by intentionally causing "the death of a person in the good faith but unreasonable belief that one or more grounds for justification exists . . . ." It further instructed on possible justifications and on "deadly" and "reasonable" physical force. The defendant contends that one instruction combining negligent and intentional killing is confusing and notes that the instruction is a combination of two instructions, Colorado Jury Instructions, Crim. 9:10 and 9:11. Although it may have been better to separate the two instructions for the sake of clarity, there was no reversible error in the failure to do so.

■ Further, the defendant contends that the instruction to the jury on deadly physical force was not supported by the evidence. The instruction given on deadly physical force was taken from COLJI, Crim. 5:10, and from 1971 Perm. Supp., C.R.S. 1963, 40-1-1001(3)(d)[5], and read:

" 'Deadly physical force' means force, the intended, natural, and probable consequence of which is to produce death, and which does, in fact, produce death."

Defendant states that the testimony of defendant clearly shows that he intended to frighten, and not to kill, and that the giving of the instruction was error. Although the jury found that the defendant did not intend to kill, intent was a jury question, and that instruction was not improperly given.

## IV.

Other assignments of error as to instructions are without merit. Under the disposition made herein, it is unnecessary to consider the remaining assignments of error.

The judgment is reversed and the cause remanded with directions to vacate the judgment and to order the retrial of the defendant for criminally negligent homicide.