**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Patricio SAAVEDRA–RODRIGUEZ, Defendant–Appellant.**

**No. 96CA0481.**

Colorado Court of Appeals, Div. I.

May 1, 1997.

Rehearing Denied June 12, 1997.

Certiorari Granted Jan. 12, 1998.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Catherine P. Adkisson, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge NEY.

Defendant, Patricio Saavedra–Rodriguez, appeals the judgment of conviction entered on a jury verdict finding him guilty of manslaughter as a lesser-included offense of second degree murder. We reverse and remand for a new trial.

Defendant contends the trial court erred by not allowing him to present an "intervening cause" defense premised on a claim that the victim's death resulted from grossly negligent medical care. We agree.

Defendant stabbed the victim in the chest with a knife. After police officers responded to an emergency call and located the victim, he was transported to a hospital. When the victim arrived at the hospital he was conscious, talking, and able to assist in moving himself from the ambulance cot to the emergency room stretcher. However, the victim's condition quickly deteriorated and, after unsuccessful emergency surgery was performed, he died.

An autopsy disclosed that the knife had penetrated approximately four and one-half inches into the victim's chest cavity. The knife punctured a lung and cut the victim's heart.

Prior to trial, the prosecution filed a motion seeking to prevent defendant from presenting an intervening cause defense. The prosecution argued that even if the medical treatment provided to the victim at the hospital was sub-standard, it did not constitute an intervening cause of the victim's death.

At a pre-trial hearing on the motion, defendant presented evidence establishing that there were two physicians who treated the victim in the emergency room. According to an "incident report" prepared by one of the doctors, the other surgeon provided sub-standard care to the victim in a variety of ways. The report asserted that the surgeon initially failed to recognize the possibility of a serious internal injury, failed to undertake procedures necessary to remove accumulated blood from the victim's chest, withheld administration of additional fluids and units of blood, called off the "Trauma Red" alert which had been called to summon an anesthesiologist, and failed promptly to initiate a thoracotomy despite the fact the victim was in "arrest."

The report further detailed how, once he did perform a thoracotomy, the surgeon failed to find the cut of the victim's heart, discontinued cardiac massage, and refused to approve a resuscitative procedure whereby blood is administered directly to the heart. The second physician's report explained that he resumed the cardiac massage and, when the surgeon directed him to discontinue temporarily plugging the heart laceration, he refused. The report observed that the surgeon had not undertaken aortic cross-clamping in a timely manner and that, when he finally did, he may have caused a "caval injury."

In two written orders, the trial court ruled that defendant had failed to present evidence

warranting presentation of an intervening cause defense. The trial court reasoned that, even if the medical treatment provided to the victim was grossly negligent, it had not contributed to the victim's death because the victim would have died even if he had received no medical care at all. Although the court acknowledged that there was ample evidence to support the defendant's assertion that the victim would likely have lived if he had received appropriate medical treatment, the court ruled that, absent more, such a showing was legally insufficient to justify an intervening cause defense because it did not "accelerate or increase the likelihood of death."

A conviction for criminal homicide requires proof beyond a reasonable doubt that death was a natural and probable consequence of the defendant's unlawful act. *Hamrick v. People*, 624 P.2d 1320 (Colo. 1981). Consistent with that requirement, the supreme court has held that independent intervening acts not attributable to the accused may relieve a defendant of criminal responsibility for the ensuing death of the victim. *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975).

In *Calvaresi*, the court ruled that the defendant was entitled to have the jury instructed regarding the defense of intervening cause because the facts of the case raised the issue whether the victim had received grossly negligent medical care. Specifically, the evidence established that, after defendant shot him, the victim was taken to an emergency room. A physician examined him, failed to detect the bullet entrance wound in his back, and directed that he be transported to a second hospital. After spending two hours at the first hospital, the victim died during the transport. Two doctors testified that the victim died from the bullet wound, but two other doctors testified that the victim's death was caused by the inadequate medical care provided at the hospital.

We conclude that *Calvaresi* stands for the proposition that, once a physician undertakes a duty to treat a victim, grossly negligent delay in diagnosing and providing medical treatment can amount to an intervening cause of death if adequate timely medical treatment would have saved the victim's life.

Other than *Calvaresi*, the only Colorado decision analyzing an intervening cause defense based on allegedly deficient medical treatment is *People v. Fite*, 627 P.2d 761 (Colo.1981). In *Fite*, the supreme court held that the defendant was not entitled to an intervening cause defense where she shot the victim and a treating physician's decision to discontinue the victim's antibiotic treatment caused a gunshot-related liver abscess to burst, with fatal consequences. Significantly, the court reached that conclusion after detailing the symptoms of infection manifested by the victim and determining that the physician's failure to diagnose the abscess did not amount to gross negligence. Because *Fite* recognized that a physician's grossly negligent failure to diagnose *could* constitute an intervening cause, it is consistent with our reading of *Calvaresi*.

Here, the trial court acknowledged that defendant made a substantial pre-trial showing that the medical treatment provided to the victim was grossly negligent in that it was delayed, interrupted, and seriously deficient. Nevertheless, the trial court ruled that, under *Calvaresi*, only affirmatively injurious medical treatment could be an intervening cause. In our view, this ruling was erroneous and denied defendant the opportunity to have the jury determine whether the medical treatment provided to the victim was gross negligence constituting an intervening cause of death.

Defendant was entitled to have the jury decide if proper treatment by the first physician would have saved the victim's life and whether the surgeon's interference and substandard care contributed to the death of the victim by interfering with the proper care being administered by the first physician. Accordingly, we must reverse.

In light of our conclusion, we do not address defendant's remaining claim of error.

The judgment is reversed and the cause is remanded for a new trial.

METZGER and CASEBOLT, JJ., concur.