The PEOPLE of the State of
Colorado, Petitioner,

v.

Patricio SAAVEDRA–RODRIGUEZ,
Respondent.

No. 97SC543.

Supreme Court of Colorado,
En Banc.

Dec. 14, 1998.

Rehearing Denied Jan. 11, 1999.

As Modified Feb. 11, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Catherine P. Adkisson, Assistant Attorney General, Criminal Enforcement Section, Denver, for Petitioner.

David F. Vela, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' ruling that a defendant on trial for homicide should have been allowed to present evidence of inadequate medical treatment as the intervening cause of the victim's death. *See People v. Saavedra–Rodriguez*, 949 P.2d 86, 88 (Colo.App.1997). The trial court determined that the defendant had not offered sufficient evidence to submit an intervening cause defense to the jury. The court of appeals ordered a new trial. We hold that grossly negligent medical treatment is an intervening cause of death only if the initial wound would probably not have been fatal without the treatment. We also hold that a defendant need only offer some evidence that the medical treatment was the intervening cause of death to be entitled to submit the defense to a jury. We reverse the decision of the court of appeals because the defendant's offer of proof did not meet this standard.

I.

On September 9, 1994 the defendant, Patricio Saavedra–Rodriguez, stabbed Pedro Avila in the chest. The victim was found by his roommates and brought to the hospital by ambulance. Upon arrival at North Colorado Medical Center, the victim was treated by an emergency room doctor, Dr. Claman; a surgeon, Dr. Wikholm; and several nurses. Despite treatment, the victim's condition deteriorated and he did not survive. According to the autopsy, the victim died of a stab wound that penetrated approximately four and one-half inches into the victim's chest cavity, punctured his lung, and cut a one-inch hole in his heart.

During treatment of the victim, Drs. Claman and Wikholm disagreed about the severity of the wound, the appropriate course of treatment, and whether to continue resuscitative measures. Dr. Claman subsequently filed an "incident report" with the hospital criticizing Dr. Wikholm's treatment. The hospital's internal peer review concluded that Dr. Wikholm failed to provide "aggressive trauma management."

The defendant was charged with second-degree murder. Based upon the victim's medical records and interviews with hospital personnel, who were involved in the victim's care, the defendant sought to raise an intervening cause defense. The prosecution moved to prevent the defense based on its argument that, although Dr. Wikholm's care may have been substandard, it did not rise to the level of an intervening cause.

At the pretrial hearing on the prosecution's motion to prevent the defendant from presenting an intervening cause defense, the parties disputed the standard of proof required for an intervening cause defense. The prosecution argued that the defendant had the burden of proving within a reason-

able degree of medical certainty that Dr. Wikholm's gross negligence caused the death. The defense argued that, in order to raise the defense, there need be only a scintilla of evidence to support an intervening cause theory.

The defense made an offer of proof as to the testimony of a number of medical practitioners. This testimony would have been that Dr. Wikholm made several errors in his diagnosis and treatment of the victim. Additional testimony would have been that Dr. Wikholm unnecessarily delayed treatment and that given proper timely treatment the patient may have had a better chance of survival. Finally, the defense would have offered testimony that the patient survivability rate after a heart wound is higher than 50% and in certain circumstances increases to 80% if afforded proper treatment.

Although the defendant offered to present testimony of doctors and nurses who were critical of Dr. Wikholm's care, he did not offer testimony that Dr. Wikholm's allegedly substandard care was the cause of the victim's death. In fact, all of the doctors would have testified that the cause of the victim's death was the stab wound inflicted by the defendant.

In a written order issued on October 19, 1995, the trial court disallowed the defendant's intervening cause defense. The court found that, according to *People v. Calvaresi*, 188 Colo. 277, 283, 534 P.2d 316, 319 (1975), a defendant is entitled to an intervening cause instruction only if the improper medical care is a cause "but for which death would not have occurred." According to the trial court's reasoning, the victim would have died from the stab wound had no care been rendered. Therefore, "no acts or omissions by [Dr. Wikholm] changed the course of natural effects that flowed from the stabbing of the victim." Furthermore, the trial court concluded that, despite evidence that given proper medical care the defendant would have had a better chance of survival, the treatment received by the victim did not contribute to his death, it merely failed to prevent it. Therefore, the physician's treatment did not constitute an intervening cause.

The defendant was found guilty of manslaughter as a lesser-included offense of second-degree murder, and the trial court entered a judgment of conviction. The court of appeals reversed the conviction and ordered a new trial. *See Saavedra–Rodriguez*, 949 P.2d at 88. The court of appeals held that *Calvaresi* stands for the proposition that "once a physician undertakes a duty to treat a victim, grossly negligent delay in diagnosing and providing medical treatment can amount to an intervening cause of death if adequate timely medical treatment would have saved the victim's life." *See id.* The court of appeals found that the question of whether Dr. Wikholm's care amounted to gross negligence constituting an intervening cause should have gone to the jury. *See id.*

We agree with the trial court. We hold that improper medical treatment does not relieve the defendant of liability for the death of the victim unless the treatment is grossly negligent and death probably would not have otherwise occurred. Therefore, we reverse the judgment of the court of appeals.

## II.

In order to resolve the issue before us, we must first set forth the essential components of an intervening cause defense in criminal law. We then define the quantum of evidence necessary to raise this issue before a jury and determine whether the defendant's offer of proof met this standard.

### A.

▮▮▮ A conviction for criminal homicide requires proof beyond a reasonable doubt that death was a natural and probable consequence of the defendant's unlawful act. *See Hamrick v. People*, 624 P.2d 1320, 1324 (Colo.1981). The prosecution therefore must prove that the defendant's conduct was the actual cause of death, in the sense that it began a chain of events the natural and probable consequence of which was the victim's death. *See id.* at 1323. However, under certain circumstances, the defendant may be relieved of liability for the death of the victim if there has been an independent intervening act. *See Calvaresi*, 188 Colo. at 283, 534 P.2d at 319. An independent inter-

vening cause is an act of an independent person or entity that destroys the causal connection between the defendant's act and the victim's injury and, thereby becomes the cause of the victim's injury.

In *Calvaresi*, we adopted Wharton's rule on intervening cause:

> To warrant a conviction for homicide, the death must be the natural and probable consequence of the unlawful act, and not the result of an independent intervening cause in which the accused does not participate, and which he could not foresee. If it appears that the act of the accused was not the proximate cause of the death for which he is being prosecuted, but that another cause intervened, with which he was in no way connected, and but for which death would not have occurred, such supervening cause is a defense to the charge of homicide.

1 Ronald A. Anderson, *Wharton's Criminal Law and Procedure* § 200, at 448 (12th ed.1957); *see Calvaresi*, 188 Colo. at 283, 534 P.2d at 319. We explained that an intervening cause is a defense to the charge of homicide if it is unforeseeable, and a cause without which death would not have occurred. We discuss these components in turn.

■ For an independent intervening cause to relieve a defendant of liability it must not be reasonably foreseeable. Simple negligent medical treatment, although hopefully unusual, is sufficiently ordinary that we consider it foreseeable. "[N]egligence, unfortunately, is entirely too frequent a human conduct to be considered 'abnormal'". *Calvaresi*, 188 Colo. at 283, 534 P.2d at 319, (citing *Perkins on Criminal Law* § 9, at 716 (2d ed.1969)). For this reason, we have previously stated that mere negligence on the part of an attending physician does not constitute a defense. *See id.*, at 283, 534 P.2d at 319. Therefore, one who has inflicted a wound or injury upon another is criminally responsible for the victim's death even where different or more skillful medical treatment might have saved the victim's life, or where death was immediately caused by a surgical operation rendered necessary by the wound or injury. *See State v. Jackson*, 223 N.W.2d 229, 233 (Iowa 1974).

■ In *Calvaresi*, we recognized that unlike simple negligence, gross negligence is sufficiently extraordinary to be classified as unforeseeable. *See* 188 Colo. at 283, 534 P.2d at 319. Where medical treatment is so deficient as to constitute gross negligence or intentional malpractice, such medical treatment is abnormal and not reasonably foreseeable. *See People v. Gulliford*, 86 Ill. App.3d 237, 41 Ill.Dec. 596, 599, 407 N.E.2d 1094, 1097 (1980).

We have established that gross negligence is unforeseeable. However, in order for the gross negligence to discharge the defendant of liability for homicide, the maltreatment must also be the cause but for which death would not have occurred. *See People v. Fite*, 627 P.2d 761, 766–67 (Colo.1981); *Calvaresi*, 188 Colo. at 283, 534 P.2d at 319. Grossly negligent medical treatment is the cause but for which death would not have occurred when it disrupts the natural and probable sequence of events following the defendant's act and intervenes to cause the victim's death.

We are concerned that this component, the cause but for which death would not have occurred, could be misunderstood as merely requiring an event in a sequence of events which produced death. Indeed, this appears to be the misunderstanding of the court of appeals, which stated that grossly negligent delay in diagnosing and treating could amount to an intervening cause if proper treatment would have saved the victim's life. Rather, in order for grossly negligent medical treatment to relieve the defendant of liability, it must interrupt the natural and probable sequence of events to cause death. This interruption only occurs when death would not have been the probable and natural result without the grossly negligent medical treatment.

■ To determine whether grossly negligent medical treatment was the cause of death, we look to the initial trauma to the victim as well as to the nature of the improper treatment. We consider the defendant's act, the nature of the wound inflicted by the defendant, the location of the wound on the victim, the natural and probable result of the

injury, and the actual result of the medical treatment. The inquiry should focus on whether the wound inflicted by the defendant is the type of wound that would generally endanger or destroy life and from which the victim would likely die if little or no treatment is provided. Accordingly, a defendant is not relieved of liability, even in the face of grossly negligent medical treatment, if the original wound would likely have been fatal without the treatment. *See* Arthur Leavens, *A Causation Approach to Criminal Omissions*, 76 Cal. L.Rev. 547, 597 (1988). Conversely, if the wound inflicted upon the victim would probably not have been fatal, but the victim dies as a result of the physician's grossly negligent treatment, the physician's gross negligence is an intervening act that relieves the defendant of criminal liability for the death. *See Noble v. State*, 54 Tex.Crim. 436, 113 S.W. 281, 282–83 (Tex.Crim.App. 1908) (one inflicting a wound upon another which is not fatal is not guilty of any degree of culpable homicide, even if the victim dies, if the death is a result of physician gross mistreatment).

We find it persuasive that other courts have also drawn distinctions based upon the seriousness of the original wound. *See Tibbs v. Commonwealth*, 138 Ky. 558, 128 S.W. 871, 873 (Ky.1910) (if wound was dangerous – that is, calculated to endanger or destroy life— and death ensued therefrom, it is sufficient proof of murder or manslaughter); *State v. Snider*, 81 W.Va. 522, 94 S.E. 981, 984–85 (W.Va.1918) (assailant who administered a non-mortal wound would be absolved by subsequent malpractice only if the malpractice would have killed victim apart from the wounds). By drawing this distinction, we hold a defendant criminally liable for death that results from the original injury but relieve a defendant of criminal liability for death that results from grossly negligent medical treatment.

Our holding, that grossly negligent medical treatment is not an intervening cause of death unless the initial wound would not have been fatal without treatment, is consistent

with our analysis in *Calvaresi*.[1] *See* 188 Colo. at 283, 534 P.2d at 319. Calvaresi shot an intruder in the shoulder. The victim was taken to the hospital where he was examined and treated. In the course of being transferred to another hospital, he died. The treating doctor and another physician testified that the cause of death was the bullet wound, which severed a major artery. Two other doctors testified that the *sole* cause of death was substandard medical care. *See id.* at 279, 534 P.2d at 317.

Although the sole cause testimony offered in *Calvaresi* was more than adequate evidence that death may not have resulted absent the grossly negligent medical treatment, we made it clear that the defendant need not provide evidence that the intervening act rise to the level of the sole cause of death. We specifically directed that the jury be informed of Wharton's rule. *See id.* at 283, 534 P.2d at 319. We emphasized that gross negligence, which is not foreseeable, is a defense if death would not have resulted but for that gross negligence. *See id.*

In sum, in order to discharge a defendant of liability for homicide, an intervening act must be an unforeseeable act but for which the victim would not have died. Grossly negligent medical treatment is not foreseeable. Thus, if the treatment is grossly negligent and the wound inflicted by the defendant would not have been likely to cause death absent the medical treatment, the medical treatment constitutes an independent intervening act relieving the defendant of liability for the victim's death.

### B.

Having explained the essential components of the intervening cause defense, we now consider the quantum of evidence necessary to raise this defense and determine that the defendant's offer of proof did not meet this standard. The defendant contends that, even if the trial court was convinced that the doctor's care did not constitute gross negligence such that it would be an intervening cause, he should not have been precluded

---

1. In *Calvaresi* it was not necessary for us to discuss whether the victim's shoulder wound was of the type generally likely to cause death be-cause the issue before us concerned the jury instruction, not whether the evidence should be submitted to the jury.

from presenting the defense to the jury. Although the causation element must be submitted to the jury, all potential defenses to the element are not jury issues. *See Lybarger v. People*, 807 P.2d 570, 579 (Colo.1991). Only defenses raised and supported by some evidence fall to the province of the jury. *See id.*

The quantum of evidence that must be offered by the defendant in order to be entitled to an instruction on a theory of defense is "a scintilla of evidence". *See People v. Lundy*, 188 Colo. 194, 197, 533 P.2d 920, 921 (1975). "Some credible evidence", an alternative statement of the "scintilla of evidence" standard, is necessary to present an affirmative defense. *See People v. Dover*, 790 P.2d 834, 836 (Colo.1990). It merely requires some evidence to support the defense. *See People v. Dillon*, 655 P.2d 841, 845 (Colo.1982). We hold that the intervening cause defense is treated like an affirmative defense or a theory of defense for the purpose of determining the quantum of evidence necessary to submit the issue to the jury. Therefore, a defendant must present a scintilla of evidence, or some evidence, that grossly negligent medical treatment is the cause of death, which would not have otherwise occurred, in order to be entitled to submit the issue to the jury. The court, not the jury, must make threshold determinations of whether an affirmative defense can be supported by the evidence. *See Lybarger*, 807 P.2d at 579.

The remaining issue is whether the defendant presented sufficient evidence to allow the defense to be considered by the trier of fact. The defendant contends that his offer of proof evinces that had adequate medical treatment been provided, the victim would have had a greater chance of survival. The court must view the defendant's offer of proof in the light most favorable to the defendant and draw all reasonable inferences therefrom. However, assuming the truth of the defendant's offer of proof, evidence that adequate medical care might have prevented death does not show that the medical care that was provided actually caused death. Whether the victim would have had a better chance of survival with proper medical care

is a different inquiry from whether he would have been likely to survive absent the medical care he received. Because the defendant's criminal liability is premised, in part, on the nature of the wound inflicted by the defendant, the victim's chance of survival, given proper care, is only relevant to consider whether the wound was of the type likely to result in death had little or no treatment been provided. We must also consider the defendant's act, the nature of the wound inflicted by the defendant, the location of the wound on the victim, the natural and probable result of the injury, and the impact of treatment on the victim. A failure to provide or select the best treatment, and therefore save the victim, should not relieve the original assailant of liability if the wound was of the type likely to result in death if little or no treatment had been provided. *See* Lawrence Crocker, *A Retributive Theory of Criminal Causation*, 1994 J. Contemp. Legal Issues 65, 95.

Here the defendant did not meet the foundational requirements necessary to present an affirmative defense. The defendant offered proof of improper medical care. He failed to offer any evidence that would show that the victim's wound was unlikely to result in death had little or no treatment been provided. Therefore, he has not offered evidence that Dr. Wikholm's medical care may have caused the victim's death. Thus, the defendant has not offered a scintilla of evidence that the medical care constituted gross negligence absent which death would not have occurred. In order to present an intervening cause defense to the jury, the defendant must present evidence that the natural chain of causation flowing from the defendant's act was broken, as where, "the defendant did not inflict a fatal wound and the victim died only from the effects of the subsequent act." *See* Wayne R. Lafave et al., *Substantive Criminal Law, Basic Premises of the Criminal Law* § 3.12, at 406 (1986).

We agree with the trial court that the treatment provided did not change the course of natural effects that flowed from the stab wound to the victim's heart. Considering the defendant's act, the nature of the wound inflicted by the defendant, the location

of the wound on the victim, the natural and probable result of the injury, and the impact of the treatment on the victim, we conclude that such a wound is the type of wound likely to result in death. Since the defendant did not lay a proper foundation as to the existence of an intervening cause defense, the trial court was correct to withhold the evidence from the jury.

The trial court's ruling is consistent with our holding in *Fite*. In *Fite*, the defendant shot her husband. *See Fite*, 627 P.2d at 763. During the victim's recovery, his physician discontinued antibiotic treatment and the victim died subsequently from a burst liver abscess. *See id.* The defendant claimed that the physician's treatment, rather than the gunshot wound, was the cause of the victim's death. *See id.* However, the only medical testimony offered was from the treating physician who testified that prior to discontinuation of the antibiotics there was no indication the victim was suffering from an infection.[2] *See id.* at 767. Because Fite did not show that the medical treatment was even negligent, she did not present any evidence that the treatment was grossly negligent. Hence, we concluded that the intervening cause defense should not have been submitted to the jury. However, we also noted that grossly negligent medical treatment would be a defense "under those circumstances where, but for the gross negligence, death would not have resulted." *Id.* at 767.

The trial court's ruling is also consistent with our holding in *Calvaresi*, where the defense offered the testimony of two doctors who claimed that the treating doctor's negligence was the *sole* cause of the victim's death. *See* 188 Colo. at 280, 534 P.2d at 317. If the medical treatment was the *sole* cause of death, it would have been grossly negligent and death would not have otherwise resulted. Thus, we held in *Calvaresi* that

the jury should have been instructed on the intervening cause defense.

Here, the defendant offered testimony that the victim might have survived the injury had he been given immediate and proper treatment. However, he did not offer any evidence to show that the physician's treatment was the *sole* cause of death. Nor did he meet the lesser standard that the victim would have been likely to survive absent the medical care that was provided. Accordingly, the trial court correctly excluded evidence of deficient medical care because there was no evidence that the medical care was the cause of death.

### III.

In sum, improper medical treatment is an intervening cause of death only if it is grossly negligent and the initial wound would not likely have been fatal without the treatment. A defendant need only offer some evidence that the medical treatment was the intervening cause of death to be entitled to submit the defense to a jury. Accordingly, we reverse the court of appeals and remand with directions to consider any unresolved issues.

---

**2.** The only medical testimony came from the general surgeon, who was the attending physician. *See Fite,* 627 P.2d at 767. He testified that the victim's white blood cell count was generally consistent with the decrease in bone marrow function due to the administration of antibiotics, and was consistent with the blood loss and trauma caused by the wounds and recent surgery. *See id.* Furthermore, he testified that laboratory tests prior to the bursting of the liver abscess were unremarkable and that, prior to the burst, the victim's clinical signs indicated a steady improvement. *See id.*