23CA1053 Peo v Medina 12-26-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1053
City and County of Broomfield District Court No. 22CR123
Honorable Priscilla J. Loew, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Matthew Aaron Medina,

Defendant-Appellant.

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 26, 2024

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant
Attorney General & Assistant Solicitor General, Denver, Colorado, for Plaintiff-
Appellee

Megan A. Ring, Colorado State Public Defender, John P. Finnegan, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Matthew Aaron Medina, appeals the district court's order imposing restitution for damages to a car. We reverse the award as to the car's broken windows, but otherwise affirm.

## I.     Background

¶ 2     Just after midnight, in an area known for motor vehicle thefts, officers observed a car inside a locked and gated construction area with its taillights on. Unable to access the car's location with their patrol cars, the officers approached the car on foot, at which point they learned that it was stolen. Inside the car, the officers saw Medina asleep in the driver's seat. The officers knocked briefly on the trunk of the car, but Medina did not wake up. The officers did not see any weapons inside the car, but it appeared to be full of items. The officers decided to arrest Medina, so they broke the front driver- and passenger-side windows, removed him from the car, and took him into custody.

¶ 3     Medina was charged with two counts of first degree aggravated motor vehicle theft. He entered into a deferred judgment and sentence agreement for first degree criminal trespass, in exchange

for the dismissal of the original charges and a stipulated sentence of one year of unsupervised probation.

¶ 4    The district court accepted the parties' agreement and sentenced Medina accordingly.  The plea agreement "obligated [Medina] to pay restitution as part of this plea agreement, and further agree[d] that the amount of restitution [would] be determined within 91 days of sentencing unless that deadline [was] extended for good cause."  The court thus ordered Medina to pay restitution and granted the prosecution thirty days to submit a restitution request.

¶ 5    Four days later, the prosecutor filed a motion for restitution requesting $1,235.83 — $200 to reimburse the owner of the car for the impound fee, $803.72 for the broken car windows, and $232.11 to replace the car's broken antenna.  Medina objected to the request as it pertained to the broken car windows and the antenna, but he did not object to the impound fee.  The court set a hearing.

¶ 6    At the restitution hearing, the district court heard argument from the parties and reviewed the probable cause affidavit and the body camera (bodycam) footage of the incident.  The court granted the prosecution's request for restitution for the car's broken

windows but not the antenna. And because there was no objection to the impound fee, the court ordered Medina to pay restitution for that as well.

## II. Statutory Violation

¶ 7 Medina contends that the restitution order must be vacated because the prosecution violated section 18-1.3-603(2)(a), C.R.S. 2024, when it failed to present "materials establishing the amount of restitution and the identities of the victims that were available to it at sentencing." This lack of statutory compliance, Medina asserts, "deprive[d] the court of authority to act upon the restitution request."

¶ 8 We agree that the district court erred when it granted the prosecution thirty days to submit restitution information absent a request for an extension of time or any showing that the restitution information was not available to the prosecutor before sentencing. However, because we also conclude that the error was harmless, we decline to vacate the restitution order on this basis.

## A. Waiver

¶ 9 Initially, we reject the People's assertion that Medina waived his claim that the People violated section 18-1.3-603(2)(a). Whether

a party waived an argument is a question of law that we review de novo. *People v. Martinez Rubier*, 2024 COA 67, ¶ 30.

¶ 10 The People assert Medina waived this issue because his plea agreement obligated him to pay restitution and obligated the district court to enter an order under section 18-1.3-603(1)(b). But the language in the plea agreement the People point to — "I agree that I am obligated to pay restitution as part of this plea agreement, and further agree that the amount of restitution will be determined within 91 days of sentencing unless that deadline is extended for good cause" — refers to the *court's* deadline to set the amount of restitution. It says nothing about the prosecution's deadline to submit the restitution information to the court. *See id.* at ¶ 31 (finding no waiver because "[t]he reference in the plea agreement to 'the amount [of restitution] to be determined within 91 days' speaks to *the court's* deadline to set the amount of restitution" and nothing in the plea agreement "sa[id] the prosecutor [was] exempt from the unambiguous mandate in section 18-1.3-603(2)(a)").

¶ 11 We likewise disagree with the People's assertion that Medina impliedly waived this issue because defense counsel remained silent at the sentencing hearing when the district court granted the

4

prosecution thirty days to submit restitution information. "Waiver is the intentional relinquishment of a known right or privilege. Although a waiver can be implied, the conduct must be unequivocal and clearly manifest an intent to relinquish the claim. The mere failure to raise an issue does not suffice." *People v. Fregosi*, 2024 COA 6, ¶ 17 (citations omitted). And here, defense counsel did not affirmatively state a position when the court granted the People thirty additional days to provide restitution information; rather, he said nothing. We therefore reject the People's invitation to find waiver.

### B. Preservation and Standard of Review

¶ 12 The parties agree that this issue was not preserved; however, they dispute whether we should characterize Medina's claim as an illegal sentence claim or an illegal manner claim. *See* Crim. P. 35(a) (noting that an illegal sentence claim seeks "correct[ion] of a sentence that was not authorized by law or that was imposed without jurisdiction"); *see also id.* (noting that the court "may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence").

¶ 13    But Medina is not appealing the denial of a postconviction motion.  He is appealing the order awarding restitution, as is his right.  *See Sanoff v. People*, 187 P.3d 576, 578 (Colo. 2008) ("[A]n order for a specific amount of restitution is itself an appealable order.").  Thus, whether and how his claim might be cognizable under Crim. P. 35(a) is of no import here.  Therefore, although he did not preserve his argument that the prosecution's failure to comply with section 18-1.3-603(2)(a) deprived the district court of authority to impose restitution, we will address it on the merits.  *See Martinez Rubier*, ¶ 23 (declining to apply a plain error standard to an unpreserved challenge to a restitution order); *cf. Fransua v. People*, 2019 CO 96, ¶ 13 ("There is no preservation requirement for a Rule 35(a) claim.  It makes no sense to require preservation of a claim on direct appeal when an identical claim could be raised without preservation after the conclusion of the direct appeal.").

¶ 14    Because Medina's argument depends on the interpretation of the restitution statutes and whether a court has authority to order a defendant to pay restitution, we review it de novo.  *People v. Weeks*, 2021 CO 75, ¶ 24.

## C.    Analysis

¶ 15    Medina asserts that the restitution order must be vacated because the district court lacked authority to order restitution after the prosecution violated section 18-1.3-603(2) and *Weeks* by failing to present restitution information that was available at sentencing. But even assuming that the court erred by granting the prosecution additional time to request restitution absent a showing that the restitution information was "not available prior to the order of conviction," § 18-1.3-603(2)(a), *see Martinez Rubier*, ¶ 41, we conclude that any error was harmless.

¶ 16    The restitution statute requires every order of conviction to include one of four types of restitution orders.  § 18-1.3-603(1); *Weeks*, ¶ 3.  As relevant here, section 18-1.3-603(1)(b) requires an order of conviction to include "[a]n order that the defendant is obligated to pay restitution, but that the specific amount of restitution shall be determined within the ninety-one days immediately following the order of conviction, unless good cause is shown for extending the time period by which the restitution amount shall be determined."

¶ 17 "The court shall base its order for restitution upon information presented to the court by the prosecuting attorney, who shall compile such information through victim impact statements or other means to determine the amount of restitution and the identities of the victims." § 18-1.3-603(2)(a). "[T]he prosecuting attorney shall present this information to the court prior to the order of conviction or within ninety-one days, if it is not available prior to the order of conviction." *Id.*

¶ 18 A division of this court has concluded that section 18-1.3-603(2)(a) imposes an obligation on the prosecution to use reasonable diligence in determining the amount of restitution it will request prior to the entry of the order of conviction. *People v. Brassill*, 2024 COA 19, ¶¶ 1, 30, 45. Another division further held that a district court errs when it extends the prosecutor's deadline to present restitution information until after sentencing in the absence of a demonstration that the restitution information was unavailable before the sentencing hearing. *Martinez Rubier*, ¶¶ 3-4, 21, 41. However, both divisions ultimately concluded that because the court entered the restitution order within the statutory deadline, it never lost authority to enter the restitution order. *See*

*Brassill*, ¶ 58; *see also Martinez Rubier*, ¶ 47. And so long as the court's grant of an extension of time to provide restitution information did not prejudice the defendant, any error by the court was harmless and did not require vacatur of the restitution order. *See Martinez Rubier*, ¶¶ 48, 54.

¶ 19 We agree that harmless error review applies to these circumstances and conclude that any error here was harmless for two reasons. First, the district court ordered restitution before the expiration of the ninety-one-day deadline in section 18-1.3-603(1)(b). And second, Medina has not shown that he suffered actual prejudice from the delay in ordering restitution. *See Martinez Rubier*, ¶¶ 42-54; *Brassill*, ¶¶ 56-63. Acknowledging that *Brassill* and *Martinez Rubier* conducted a harmlessness analysis, Medina asserts we should "not follow suit." But, exercising our own independent judgment, we find the reasoning in *Brassill* and *Martinez Rubier* persuasive and decline Medina's invitation to depart from it. *See People v. Smoots*, 2013 COA 152, ¶ 20 (noting that divisions of the court of appeals give "considerable deference" to the decisions of other divisions), *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15.

¶ 20    Accordingly, even if the court erred by authorizing thirty days for submission of the restitution information, we conclude that the error was harmless because the restitution order was entered within the ninety-one-day statutory deadline in section 18-1.3-603(1)(b).  Thus, the district court never lost authority to enter the order and, absent any showing of prejudice we will not vacate the restitution order on this basis.  *See Martinez Rubier*, ¶ 54.

### III.    Proximate Cause

¶ 21    Next, we address Medina's contention that the district court erred when it ordered restitution for the car's broken windows because the officer's "excessive and unreasonable force" acted as an independent intervening cause that broke the chain of causation. We agree that the court erred.

### A.    Standard of Review

¶ 22    The parties dispute the applicable standard of review.  Medina asserts his challenge is a true sufficiency challenge, *see Martinez v. People*, 2024 CO 6M, ¶ 22, and therefore maintains that the appropriate standard is de novo.  *See People v. Barbre*, 2018 COA 123, ¶ 25.  The People counter that our review should be for clear error.  *See Martinez*, ¶ 3.  We agree with the People.

¶ 23    Medina's challenge is to the district court's factual findings relating to proximate cause — that the officer's actions were reasonable and did not constitute an independent intervening cause — not to the sufficiency of the evidence the court relied on to draw this conclusion. *Id.* at ¶ 21. And we review challenges to the district court's proximate cause finding for clear error. *Id.* at ¶¶ 3, 32. Under the clear error standard, we must affirm the court's findings unless they are without record support. *Id.* at ¶ 34.

## B.    Analysis

¶ 24    A district court may order restitution for "any pecuniary loss suffered by a victim," which includes, as relevant here, "losses or injuries proximately caused by an offender's conduct . . . that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2024; *see also* § 18-1.3-603(1)(a).

¶ 25    "The prosecution bears the burden of proving, by a preponderance of the evidence, both the amount of restitution owed and that the victim's losses were proximately caused by the defendant." *People v. Perez*, 2017 COA 52, ¶ 10. "A fact is established by a preponderance of the evidence when, upon consideration of all the evidence, the existence of that fact is more

11

probable than its nonexistence." *People v. Garner*, 806 P.2d 366, 370 (Colo. 1991). In the restitution context, proximate cause is defined as a cause, which in natural and probable sequence produced the claimed injury and without which the claimed injury would not have been sustained. *People v. Dyson*, 2021 COA 57, ¶ 13.

¶ 26 However, unlawful conduct that is broken by an independent intervening cause cannot be the proximate cause of damages to another. *Martinez*, ¶ 13. To qualify as an intervening cause, an event must be unforeseeable and one in which the accused does not participate. *Id.* An independent intervening cause destroys the causal connection between the defendant's act and the victim's injury and thereby becomes the cause of the victim's injury. *People v. Saavedra-Rodriguez*, 971 P.2d 223, 225-26 (Colo. 1998). "Simple negligence is foreseeable and does not constitute an independent intervening cause; gross negligence is not foreseeable and thus may serve as an independent intervening cause." *People v. Sieck*, 2014 COA 23, ¶ 9. Gross negligence is willful and wanton conduct, such as actions committed recklessly with conscious disregard for the safety of others. *Martinez*, ¶ 14.

¶ 27     The district court made no specific findings about whether Medina was a participant in the acts that caused the broken windows or whether such acts were foreseeable. Instead, the court focused primarily on whether the officer's actions in breaking the windows were reasonable under the circumstances. The court found that the officer's conduct was "[not] unreasonable" and thus, did not rise "to a level where it became an unforeseen intervening cause or unreasonable intervening cause." But the reasonableness of the officer's actions is not particularly relevant to the question of whether they were "reasonably *foreseeable*." *See Saavedra-Rodriguez*, 971 P.2d at 226 ("For an independent intervening cause to relieve a defendant of liability it must not be reasonably foreseeable."). And in any event, the reasonableness of the officer's actions has no relevance to whether Medina was a participant in the acts that caused the broken windows. Nevertheless, even assuming the court's findings concerning the reasonableness of the officer's conduct go to foreseeability, such findings lack support in the record. And where, as here, a court's findings are clearly erroneous or not supported by the record, we set them aside. *People v. Johnson*, 2024 CO 47, ¶ 35.

13

¶ 28    In reaching its findings, the district court placed special emphasis on the bodycam footage, finding that "there were multiple officers in a dark area at night with flashlights who attempted to contact [Medina], who was passed out in a car" and "with 16 minutes, roughly 17 minutes of interaction, [Medina] never woke up while he was in the car." But the record does not support this finding. The court acknowledged that it did not rewatch the entirety of the bodycam footage because it "had watched it previously" at the motions hearing. Rather, the court explained, it "just went through [it]" "to refresh the court's memory of the circumstances and details around the body camera [footage]."

¶ 29    Contrary to the court's finding that officers interacted with Medina for "roughly 17 minutes," the bodycam footage establishes that within two minutes an officer knocked twice on the trunk of the car, shined his flashlight into the car, and determined that the driver was asleep and that the car was stolen. During that two-minute interaction, the officers were speaking in lowered voices and made no further attempts to wake or rouse Medina. After two minutes, the officers retreated from the car in hushed voices and did not interact with Medina again until they approached the car

14

fourteen minutes later, "breach[ed] both windows at the same time," and forcibly ordered Medina from the car with a police dog and guns drawn. No evidence in the record supports the notion that the officers spent seventeen minutes interacting with Medina or trying to wake him up. Thus, the court's findings based on "the length of the interaction" between the officers and Medina, and "the fact that [Medina] did not wake up during that time," were clearly erroneous.

¶ 30 The remainder of the court's findings were centered around the officer's safety concerns, including "not knowing . . . who . . . or what else may be in the car," such as other individuals or weapons. But no officers testified at the hearing to having any safety concerns, or that they could not tell if Medina was alone in the car. Indeed, the bodycam demonstrates the opposite — one officer affirmatively told the others over his radio that there was "one man sleeping in [the] vehicle" and no weapons were "in sight."

¶ 31 As previously stated, "gross negligence requires recklessness, with conscious disregard for the safety of others," *Martinez*, ¶ 37, and is "an extreme departure from the ordinary standard of care," *Smoots*, ¶ 10. Here, there is no evidence in the record that the officer's choice of action that evening was either the preferred

15

method for law enforcement to contact a sleeping suspect in a suspected stolen vehicle or the safest way to apprehend Medina to ensure both his safety and the safety of the officers. Instead, the record shows that there was at least one prudent option available to the officers that was considered but rejected for reasons unknown — namely, calling the security guard (whose number the officers had from a prior incident) for assistance with the gate so they could get their patrol cars inside the construction area to block any potential attempts by the suspect to flee. The record does not indicate why one officer did not activate his sirens (to awaken Medina) while the other officer watched over Medina. Without support in the record to justify the officer's actions, and based on the unique circumstances presented here, we conclude that the officer's actions were unforeseeable.

¶ 32 As noted, for an independent intervening cause to relieve a defendant of liability, the defendant must also not have been a participant in the event. *Id.* at 121; *Medina*, ¶ 13. But Medina, asleep in the car, was not a participant in the action that resulted in the broken windows. *See Martinez*, ¶ 43 (concluding that a defendant is a participant "in an action that he provokes"); *see also*

16

*Stewart*, 55 P.3d at 121 (concluding the defendant was a participant where the victim's injury came after "their ensuing verbal altercation").

¶ 33    Nor are we persuaded by the People's argument that Medina was a participant because his "crimes set these events into motion." Nothing about Medina's unlawful actions that evening made it natural or probable that the police would break the car's windows to apprehend him. We recognize that under certain circumstances, a defendant's participation in a criminal act, in natural and probable sequence, will result in losses to the victim and, without the defendant's unlawful act, the victim would not have sustained their losses. *See, e.g., People v. Dubois*, 216 P.3d 27, 28 (Colo. App. 2007) (defendant's criminal conduct of vehicular eluding was the proximate cause of damage to a patrol car that was involved in an accident while chasing defendant), *aff'd*, 211 P.3d 41 (Colo. 2009); *People v. Lassek*, 122 P.3d 1029, 1036 (Colo. App. 2005) (defendant's criminal conduct of leaving the scene of an accident and careless driving was proximate cause of victim's parents having to pay to attend a memorial service), *overruled on other grounds by Sullivan v. People*, 2020 CO 58; *People v. Clay*, 74 P.3d 473, 475

17

(Colo. App. 2003) (defendant's criminal conduct of stealing a car was proximate cause of towing company's losses). But it is not always the case that a defendant's criminal conduct will set into motion a causal chain of events such that the defendant will always be considered a participant by virtue of his criminal conduct. And Medina's criminal conduct here was not sufficiently connected to the broken windows to make him a participant.

¶ 34 The unique circumstances presented here lead us to conclude that Medina's criminal conduct was not the proximate cause of the damage to the car's windows. Rather, law enforcement's act of breaking the car's windows to apprehend Medina constituted an independent intervening cause, which severed the causal connection between Medina's unlawful trespass and the damage to the car's windows. Accordingly, we reverse the portion of the district court's restitution order as to the car's windows. We otherwise affirm the restitution order.

## IV. Disposition

¶ 35 The restitution order is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

18

JUDGE JOHNSON and JUDGE SCHOCK concur.